Case 4:19-cv-01712 Document 23 Filed on 10/02/20 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
October 05, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON MARK DOUTHIT, (TDCJ-CID #453033) | § § § § § § § § § § § | |
| Plaintiff, | | |
| vs. | | CIVIL ACTION H-19-1712 |
| STATE OF TEXAS, et al., | | |
| Defendants. | | |

**MEMORANDUM ON DISMISSAL**

**I.     Procedural History and Background**

Shannon Mark Douthit, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in May 2019, alleging civil rights violations resulting from a violation of the Americans with Disabilities Act and retaliation. Douthit, proceeding pro se and in forma pauperis, sues Bryan Collier, Executive Director of the TDCJ; Robert Herrera, Warden of the Pack I Unit; Mark A. Temple, Lieutenant at the Pack I Unit; Felipe J. Peralta, Jr., Lieutenant at the Pack I Unit; Mitchell D. Kroll, Sergeant at the Pack I Unit; and Sergio Perez, Major at the Polunsky Unit. Douthit alleges violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. Section 12131, et seq.

The Defendants filed a Motion for Dismissal Pursuant to Rule 12(b)(1) and Rule 12(b)(6). (Docket Entry No. 14). Douthit has responded. (Docket Entries Nos. 16, 18, & 19). The threshold issue is whether this Court should grant the motion to dismiss filed by the Defendants.

## II. Douthit's Allegations

Douthit asserts that the Defendants denied him services under the ADA though he is a qualified individual with a disability. (Docket Entry No. 1, p. 4). He states that his left leg was amputated, and he uses a prosthesis and crutches. He further states that he is six feet tall and weighs 300 pounds. He states that his obesity qualifies as a disability. Douthit asserts that Collier, Hererra, and Perez failed to comply with Judge Ellison's injunctive order to transfer inmates with heat sensitivities such as obesity. Douthit explains that in August 2017, inmates who were members of the class action in 4:14-1698 were temporarily transferred to an air conditioned unit. Douthit complains that he was left behind at the Pack Unit, where he suffered heat exhaustion.

Douthit asserts that on May 23, 2018, the Pack Unit conducted a cell search or "shake down." Lieutenants Temple and Peralta ordered Douthit to transport his property to the gym. Douthit asserts that he became hot, dizzy, and fell. Douthit was escorted to the infirmary so he could cool down.

On May 31, 2018, Douthit filed a grievance regarding this incident. He complained of being forced to carry his property in violation of his lifting restrictions. (Docket Entry No. 1-1, p. 9). Prison officials responded that Douthit's fifty-pound lifting restriction related to work assignments. (*Id.* at 10). They further advised Douthit that carts were available for transporting their property to and from the gym. (*Id.*). Prison officials further advised Douthit that inmates with verified lifting restriction were permitted to make multiple trips to and from their cells. (*Id.* at 12).

Douthit asserts that on December 7, 2018, prison officials again conducted a unit-wide shake-down. Lieutenant Temple supervised the search. Sergeant Kroll ordered all inmates in the E-Wing to transport their property to the gym to be searched. When Douthit began dragging his

property from the dorm area using a blanket, Sergeant Kroll ordered him to carry his property. Douthit informed Sergeant Kroll of his lifting restrictions. Sergeant Kroll became belligerent and said, "Shut the f— up and get out of the way." (Docket Entry No. 1, p. 6).

On December 12, 2018, Douthit filed a grievance complaining of being forced to carry his property. (Docket Entry No. 1-1, p. 5). Prison officials responded that inmates were not allowed to drag their property using state-issued blankets, but they were allowed to drag their property in bags. (*Id.* at 6).

Douthit explains that on June 6, 2018, Nurse Practitioner Chukwumerije had modified his lifting restriction from fifty pounds to thirty pounds. Douthit states that this was done to reduce the likelihood of injury to his stump. Douthit asserts that as a result of being forced to carry his property in May and December 2018, he injured his stump, the area of his left leg that was amputated. Douthit asserts that the skin broke down and became infected. Douthit seeks compensatory damages of $250,000 and punitive damages of $10,000.

The Defendants explain that in addition to the present suit, Douthit is a current class member in the class action lawsuit *Cole v. Collier,* et al., Cause No. 4:14-cv-1698, which was resolved through settlement. *See Cole v. Collier,* et al., Cause No. 4:14-cv-1698. (Docket Entry No. 14, p. 1). In that suit, Douthit filed a petition for writ of mandamus which sought individual relief related to his claim of carrying his property during shakedowns. The Defendants provided the documents related to Douthit's filing in the class action. Judge Ellison reviewed Douthit's claims and issued an order denying Douthit's petition for writ of mandamus. In his order, Judge Ellison noted that he retains jurisdiction as to matters related to enforcement of the settlement and may address claims of retaliation that are related to the settlement. Judge Ellison also opined that while he denied

Douthit's petition for writ of mandamus, Douthit may pursue his claims through this separately filed suit. The Defendants state that while the claims in this present suit reference the class action suit, based on the screening performed by Judge Ellison, the claims Douthit now brings regarding monetary relief appear to be appropriately brought as a separate suit and do not seem to be the types of claims that need to be brought within the class action case. (*Id.* at 2).

## III. Standard of Review

### A. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As such, the Court must dismiss a complaint for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.

The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In reviewing a motion under 12(b)(1) the Court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water Endeavors, LLC)*, Ch. 11 Case No. 08–10466, Adv. No. 10–1015, 2011 WL 52525, at *3 (E.D. Tex. Jan. 6, 2011) (citing *Rodriguez v. Tex. Comm'n of Arts*, 992 F. Supp. 876, 878–79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 199 (5th Cir. 2000)). A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In a facial attack, allegations in the complaint are taken as true. *Blue Water*, 2011 WL 52525, at *3 (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995)).

**B.    Rule 12(b)(6)**

A party may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Under the 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010). "Pleadings" for purposes of a Rule 12(b)(6) motion include the complaint, its attachments, and documents that are referred to in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 674 (2009) (quoting *Twombly,* 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678. When a plaintiff's complaint fails to state a claim, the Court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

"A document filed pro se is 'to be liberally construed,'... and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Under this standard, pleadings filed by a pro se litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir. 2000).

**IV.    The Claim Based on a Violation of the ADA**

The ADA reads as follows: "[s]ubject to the provisions of this title, no qualified individual

with a disability shall, by reason of such disability, be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must show that (1) he is a qualified individual; (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity; and (3) that the exclusion, denial, or discrimination was because of his disability. *Blanks v. Southwestern Bell Communications*, 310 F.3d 398, 400 (5th Cir. 2002).

A "plaintiff asserting a private cause of action for violations under the ADA [ ] may only recover compensatory damages upon a showing of intentional discrimination." *Id.* Prison officials need not anticipate an inmate's unarticulated need for accommodation or to offer an accommodation *sua sponte*; the inmate must provide evidence of his disability and the severity of the physical limitations resulting from it, and he must request an accommodation.

A disability is "physical impairment that substantially limits one or more major life activities; . . . a record of such an impairment; or . . . being regard[ed] as having such an impairment." *Haralson v. Campuzano*, 356 F. App'x 692, 697-98 (5th Cir. 2009) (citing 42 U.S.C. § 12102(1)). Major life activities are "those activities that are of central importance to most people's every day lives." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

First, to the extent Douthit asserts a claim against the Defendants under the ADA in their individual capacities, any such claim fails to state a claim since officials cannot be sued in their individual capacity under the ADA as a matter of law. *Lollar v. Baker*, 196 F.3d 603, 608-09 (5th Cir. 1999).

To the extent Douthit asserts a claim against the Defendants under the ADA in their official capacities, Douthit has not pleaded sufficient allegations to state a claim under the ADA; thereby,

the State's immunity remains intact. Assuming Douthit has sufficiently alleged a qualifying disability and that he was somehow excluded from participation in or denied the benefits of services, programs, or activities of a public entity, Douthit has not specifically alleged that the exclusion, denial, or discrimination was because of his disability. A showing of intentional discrimination is essential to success on an ADA claim. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As noted, Douthit claims that the Defendants discriminated against him by refusing to transfer him to an air conditioned unit. He further complains that he was forced to carry his property during two separate unit shake downs. Douthit has alleged no specific facts that would give rise to a reasonable inference that the Defendants, when declining to transfer him to an air conditioned unit or requiring him to carry his property, intentionally discriminated against him because of any disability.

Douthit's ADA claim against the Defendants is DISMISSED under Rule 12(b)(6). *See Bell Atl. Corp.*, 550 U.S. at 555; *Hale*, 642 F.3d at 499; *Delano-Pyle*, 302 F.3d at 575. Again, this Court will not "strain to find inferences favorable to plaintiff" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 351 (5th Cir. 2004) (internal quotation marks and citations omitted). As such, Douthit cannot establish he was "excluded from participation in or denied the benefits of" any program within the ambit of ADA Title II, and therefore cannot establish that he was denied or excluded from any program "because of his disability" by the Defendants. Douthit's ADA claim against the

Defendants is dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## V. The Retaliation Claim

Construed liberally, Douthit alleges that the Defendants retaliated against him for filing a class action, Civil Action Number 4:14-1698. Douthit explains that he was a member of the class of inmates at the Pack Unit who were exposed to extreme heat.

The Fifth Circuit has held that prison officials are prohibited from retaliating against inmates who exercise the right of access to the courts, or who complain of prison conditions or about official misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). When a prisoner claims that officials retaliated against him by issuing a false disciplinary report, favorable termination of the underlying disciplinary charge is not a prerequisite for bringing the claim. *Woods*, 60 F.3d at 1164. The concern is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report. *Id.* at 1164-1165. "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id.* at 1165 (citations omitted). In addition, proceedings that are not otherwise constitutionally deficient may be invalidated by retaliatory animus. *Id.* (citations omitted).

To prevail on a claim of retaliation, a prisoner must establish the following: (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.2d 225, 231 (5th Cir. 1998)). Causation requires a showing that "but for the retaliatory motive, the complained of incident . . .

would not have occurred." *McDonald*, 132 F.3d at 231 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)).

In reviewing claims of retaliation arising from the context of prison disciplinary charges, the Fifth Circuit has recognized that "[c]laims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). The Fifth Circuit recited the applicable standard of review:

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident-such as the filing of disciplinary reports would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)(internal citations and footnotes omitted).

Conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods*, 60 F.3d at 1166 (citing *Richardson v. McDonnell*, 841 F.2d 120, 123 (5th Cir. 1988) (upholding summary judgment dismissal of retaliation claim where inmate never offered documentary or testimonial evidence in support of assertions)); *Jones*, 188 F.3d at 326 ("because Jones has alleged no facts sufficient to demonstrate that the appellees have engaged in conduct that will result in a violation of his right of access to the court his retaliation claims fail."). Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell*, 449 F.3d 682, 686

(5th Cir. 2006). "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

Douthit claims that the Defendants retaliated against him because he participated as a class member in Civil Action Number 4:14-1698. Even though Douthit carries the burden of establishing retaliation, he offers no specific facts or documentary evidence to support his allegation of retaliation. *See McDonald,* 132 F.3d at 231 (inmate failed to provide evidence of retaliatory intent). Douthit has identified a constitutional right, the right to file complaints. In neglecting to allege fact-specific details, Douthit has not demonstrated that any of the individuals involved in the purported acts of retaliation had knowledge of Douthit's litigation in Civil Action Number 4:14-1698. Douthit asserts that prison officials failed to transport him to an air conditioned unit along with other heat-sensitive inmates in August 2017. (Docket Entry No. 1-1, p. 2). Thus, Douthit has identified a retaliatory adverse act. Douthit's claim of retaliation, standing alone, fails to meet the requisite proof of causation: he has failed to establish that but for his litigating Civil Action Number 4:14-1698, he would not have been left behind. *See McDonald,* 132 F.3d at 231.

Finally, Douthit's allegation cannot be deemed to provide "a chronology of events from which retaliation may plausibly be inferred." *Woods,* 60 F.3d at 1166. Douthit's mere use of the word "retaliation" in the absence of specific facts or documentary evidence cannot support a claim of retaliation. Consequently, Douthit's claim must fail. *Id.*; *Johnson,* 110 F.3d at 310 ("[t]he relevant showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation.") (quoting *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995)); *Richardson,* 841

F.2d at 120.

To the extent Douthit argues that the Defendants retaliated against him because he filed a complaint or participated in 4:14-1698, this is an insufficient allegation of causation as "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007); *see also Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). The fact that one event follows another in time does not raise an inference of retaliation. *Enlow v. Tishomingo Cnty., Miss.,* 45 F.3d 885, 889 (5th Cir. 1995).

Douthit has not sufficiently alleged a retaliatory motive by the Defendants, and he has not alleged a chronology of events from which retaliation may be plausibly inferred. Douthit's personal belief and conclusory allegations are insufficient to raise a factual dispute that the Defendants acted to retaliate. *See Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999); *Woods,* 60 F.3d at 1166. Douthit's retaliation claim lacks merit and is dismissed.

## VI. The Claims Against the Defendants in Their Official Capacities

Suits for damages against the State are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 90 (1982). To the extent Douthit sues the Defendants for damages in their official capacities, those claims are barred by the Eleventh Amendment.

The Eleventh Amendment does not bar Douthit's claim for prospective relief. Because the real party in interest in an official-capacity suit is the governmental entity and not the named official,

the entity's "policy or custom" must have played a part in the violation of federal law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991)(quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). Douthit has not demonstrated that a TDCJ policy caused a violation of his constitutional rights.

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court established a framework for determining whether the ADA validly abrogates state sovereign immunity for claims brought under Title II. A court asks:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such conduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity in such contexts is nevertheless valid.

*Id.* at 159; *see also Wells v. Thaler*, 460 F. App'x 303 (5th Cir. 2012) (applying *Georgia*).

Douthit mentions this standard in his response. (Docket Entry No. 18, pp. 3-4). Douthit refers to the failure to transfer him to an air conditioned unit and being forced to carry his property. Douthit does not identify "which aspects of the State's alleged conduct violated Title II," whether that alleged misconduct "also violated the Fourteenth Amendment," or whether, failing an alleged violation of the Fourteenth Amendment, "Congress's purported abrogation of sovereign immunity . . . is nevertheless valid." *Georgia*, 546 U.S. at 159. Douthit's ADA claims are barred by state sovereign immunity.

## VII. Claims Against Defendants Collier and Hererra

### A. Personal Involvement

Douthit sues Bryan Collier, Executive Director of the TDCJ and Robert Herrera, Warden of the Pack I Unit. Douthit has failed to allege specifically how Defendants Collier and Hererra were

personally involved in the alleged violations of his constitutional rights. A plaintiff bringing a civil rights claim under 42 U.S.C. § 1983 must establish a causal connection between the alleged constitutional deprivation and the defendant whom they would hold responsible; "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Rizzo v. Goode*, 423 U.S. 362, 371-77 (1976) (affirmative link needed between injury and conduct of defendant). Furthermore, a civil rights plaintiff cannot simply make generalized allegations or assert legal or constitutional conclusions to satisfy these requirements. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). To sustain his complaint, a plaintiff must instead state particular facts specifying the personal involvement of each defendant. *Fee v. Herndon*, 900 F.2d 804 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990).

Douthit alleges that Collier and Hererra failed to transfer him to an air conditioned unit in accordance with Judge Ellison's injunction order in Civil Action Number 4:14-1698. Douthit, however, fails to show how the conduct of Defendants Collier and Hererra caused his alleged injuries. As Executive Director of TDCJ, Defendant Collier does not work at the unit level. Similarly, Douthit has not shown that Warden Herrera was personally involved in the decision not to transfer Douthit to an air conditioned unit. Douthit's claims against Defendants Collier and Hererra in their individual capacities are dismissed for failure to state a claim as Douthit does not allege the sufficient personal involvement.

### B.  Supervisory Liability

To the extent Douthit is suing Defendants Collier and Hererra as supervisors, Douthit fails to state a cause of action under 42 U.S.C. § 1983. Section 1983 does not create supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Only the direct acts

or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Moreover, under § 1983, "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A supervisor may only be held liable if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

As previously stated, Douthit does not allege Defendants Collier and Hererra were personally involved in any alleged constitutional violation. Douthit does not allege Defendants Collier and Hererra implemented a specific unconstitutional policy that somehow causally resulted in any alleged injury. Douthit's claims against Defendants Collier and Hererra in their individual capacities are dismissed as there is no *respondeat superior* theory of liability in a § 1983 action.

## VIII. Conclusion

The Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), (Docket Entry No. 14), is GRANTED. Douthit's claims against Bryan Collier, Sergio Perez, Robert Herrera, Mitchell Kroll, and Felipe Peralta are DISMISSED. Douthit's Motion for Default Judgment, (Docket Entry No. 15), and Motions for Production of Documents, (Docket Entries Nos. 17 & 20), are DENIED as moot. On April 22, 2020, Douthit filed a Notice in which he complains that the Defendants have not filed a motion for summary judgment. (Docket Entry No. 22). This Court's order to answer permitted the Defendants to file a motion to dismiss or a motion for summary judgment, if appropriate. (Docket Entry No. 12). The Defendants have filed a motion to dismiss. To the extent Douthit moves for default judgment, that motion, (Docket Entry No. 22), is DENIED.

Any remaining pending motions are DENIED as moot.

SIGNED at Houston, Texas, on \_\_\_\_Oct. 2\_\_\_\_, 2020.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE