IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON MARK DOUTHIT, <br> *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-01712 |
| STATE OF TEXAS, et al., <br> *Defendants.* | § § § | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Mark A. Temple, Sergio Perez, Mitchell Kroll, and Felipe Peralta through the Office of the Attorney General of Texas, file this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In support, Defendants offer the following:

#### I.   STATEMENT OF THE CASE

Plaintiff Shannon Mark Douthit ("Douthit") is an inmate confined to the custody of the Texas Department of Criminal Justice ("TDCJ"). Proceeding *pro se* and *in forma pauperis*, Douthit filed suit against the TDCJ's Executive Director, a warden, two lieutennants, a sergeant, and a major, all in their official capacities only. ECF No. 1 ("Compl."). Douthit alleged that defendants violated the Americans with Disabilities Act 42 U.S.C. § 12131 *et seq.* ("ADA") in two ways: by forcing him, an amputee, to carry his personal belongings during two "major shakedowns" of his prison unit; and (2) by denying him air-conditioned housing, in violation of an injunction entered in *Cole v. Collier*, Civil No. 4:14-cv-1698, a class action in which Douthit is a class member. *Id.* Douthit also asserted claims under 42 U.S.C. § 1983 alleging unconstitutional retaliation by prison officials in response to his participation in the class action. *Id.* To redress these alleged harms, Douthit seeks money damages.

Defendants moved to dismiss Douthit's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 14. The Court granted that motion, finding that Douthit's

complaint failed to state claims upon which relief could be granted and, alternatively, that his claims were barred by sovereign immunity. ECF Nos. 23-24. On appeal, the Fifth Circuit affirmed in large part but reversed the dismissal of Douthit's shakedown-related ADA claims against Temple, Peralta, Perez, and Kroll (hereinafter, "Defendants"), holding that Douthit's allegations underlying those claim, if true, stated an ADA claims and a Fourteenth Amendment violation, thereby abrogating Defendants' sovereign immunity at the pleading stage. ECF No. 42. Now, on remand and with the benefit of discovery, Defendants move for summary judgment dismissal of Douthit's remaining shakedown-related claims.

## II. SUMMARY JUDGMENT EVIDENCE

**Exhibit A –** Affidavit of Beverly A. Wilbur, D.O., dated April 17, 2023, attaching excerpts from Douthit's TDCJ medical records.

**Exhibit B –** Affidavit of Major Matrice Wilburn, dated May 9, 2023.

## III. STATEMENT OF RELEVANT FACTS

### A. Policies and procedures concerning major shakedowns at the Pack Unit.

The TDCJ Pack Unit is a Type I Geriatric Facility and provides ambulatory medical, dental, and mental health services with 60 wheelchair accommodated cells and 12-bed infirmary. Ex. B at ¶ 3. Medical care available 24 hours a day, seven days a week. *Id.* Services include digital medical services electronic specialty clinics, chronic care clinics, assisted disability service showers, and CPAP accommodating housing. *Id.*

Like all TDCJ units, the Pack Unit undergoes unit-wide comprehensive searches multiple times per year. *Id.* at ¶ 4. These searches are referred to as "major shakedowns." *Id.* During major shakedowns, inmates are required to remove all personal belongings from their cells and transport those items to and from the gymnasium, where staff systematically search for contraband. *Id.*. Because the Pack Unit houses an older inmate population with a wide array of lifting and medical restrictions,

2

several policies are in place to ensure that they can safely transport their property during major shakedowns without any falls, accidents, or adverse health consequences. *Id.* at ¶ 5.

First, all Pack Unit inmates have access to rolling carts to assist them in moving their property during major shakedowns. *Id.* at ¶ 6. An inmate need only request a cart before or during one a major shakedown and one will be promptly provided by security staff.

Second, in advance of all major shakedowns, Pack Unit inmates are provided with large commissary "chain bags" in which to pack their property. *Id.* at ¶ 7. Inmates may fill chain bags with as much or as little will fit in them and may request additional bags if necessary. *Id.* If an inmate chooses not to utilize a rolling cart, chain bags may be dragged on the floor, significantly reducing the burden of moving them. *Id.* Because of the availability of rolling carts and chain bags during major shakedowns, inmates are not permitted to drag their belongings to the gym on state-issued bedsheets (which can damage the bedsheets). *Id.* at ¶ 10.

Third, Pack Unit inmates are allowed to make multiple trips between their cells and the gym during major shakedowns, thus lowering the weight of property they must transport at a time (if they choose not to use a rolling cart). *Id.* at ¶ 8.

It is incumbent on inmates to utilize these accommodations as necessary to ensure their own health and safety during major shakedowns. *Id.* at ¶ 9. Inmates with medical lifting restrictions, for example, should always request and a rolling cart to transfer their belongings. *Id.*

**B.    Events giving rise to Douthit's remaining claims in this lawsuit.**

Douthit suffered a traumatic below knee amputation of his right leg in 1986 and has a prosthetic leg. Ex. A at 1. Since September 28, 2005, Douthit has been given housing accommodations including "lower bunk only" and "ground floor only." *Id.* From September 28, 2005 through June 6, 2018, Douthit also had a lifting restriction in place of "no lifting > 50 pounds." *Id.* at 1-2. That restriction was changed to "no lifting > 30 pounds" on June 6, 2018. *Id.* at 2.

3

The Pack Unit underwent major shakedowns on May 23, 2018 and December 7, 2018. Compl. at 5-6. Douthit alleges that, on both dates, he was forced to carry his property from his cell to the gym and back in violation of his lifting restrictions. *Id.* at 5-7. However, Douthit does not claim that he requested or was denied any of the accommodations available to all inmates, such as rolling carts, chain bags, or taking multiple trips. Rather, he alleges generally that he was forced to carry his property in violation of his medical lifting restrictions, and that Defendants prevented him from dragging his property on state-issued sheets. *Id.*

Douthit alleges that, as the result of being forced to carry his property during the 2018 major shakedowns, he suffered injuries to his stump. *Id.* While his medical records do indicate that he suffered various sores to his stump, those sores were unrelated to the major shakedowns giving rise to this lawsuit. *See* Ex. A at 2-3.

### IV.      LEGAL ISSUES TO BE DECIDED

1.      Whether Douthit has Article III standing to pursue his remaining claims.

2.      Whether any genuine issue of material fact exists as to Douthit's remaining claims.

3.      Whether Douthit's remaining claims are barred by the Eleventh Amendment.

4.      Whether Douthit is precluded from obtaining compensatory damages by the PLRA's physical injury requirement.

### V.      STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disagreement among the parties as to the facts will not prevent summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, summary judgment is precluded under Rule 56 only when the dispute is genuine, and the disputed facts might affect the outcome of the suit. *See id.* at 248. When petitioning a court for summary judgment, the movant need not disprove the non-moving party's claims; but, instead, must demonstrate "an absence of evidence to support the

4

non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *accord Slaughter v Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986).

In opposing summary judgment, "the plaintiff can no longer rest on the pleadings and the court looks to the evidence before it." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). The burden is on the plaintiff to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the plaintiff's opposition to the motion for summary judgment. *Id.* If the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which [the plaintiff] will bear the burden of proof at trial," then the defendant is entitled to judgment in his favor. *Celotex*, 477 U.S. at 322. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

## VI.  ARGUMENT

### A.  Douthit lacks standing to pursue his remaining claims because he did not suffer any injury in fact that is fairly traceable to the actions of Defendants.

The Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirement, a plaintiff must demonstrate three elements: (1) an "injury-in fact" which is "concrete and particularized" and "actual or imminent not conjectural or hypothetical;" (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "At the summary judgment stage, 'the plaintiff can no

5

longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts' validating his right to standing." *Ford*, 301 F.3d at 331-32 (quoting *Lujan* 504 U.S. at 561).

Here, Douthit lacks standing to pursue his remaining ADA claims because he has not suffered any injury in fact that is fairly traceable to the challenged actions of Defendants. In his complaint, Douthit alleges that he was forced to carry his personal belongings during major shakedowns on May 23 and December 7, 2018, resulting in injuries to his stump. Compl. at 5-6. Douthit further alleges that, after both major shakedowns, he sought medical care for those injuries at the unit infirmary. *Id.* However, Douthit's medical records tell a different story. While Douthit was treated on various occasions for injuries to his stump, none of those injuries coincide with the major shakedowns, much less Defendants' actions during those shakedowns. *See* Ex. A at 2-3.

Following the major shakedown on May 23, 2018, Douthit did not immediately seek medical attention as alleged in his complaint. *Id.* at 2. He submitted a sick call request on June 5, 218, but his claim in that request was that he was "suffering complications from heat from August 2017," rather than anything to do with his stump. *Id.* Douthit when seen the next day, and during the visit complained about feeling hot and dizzy following the major shakedown. *Id.*[1] The clinic note from that visit mentions a wound to Douthit's stump but identifies the wound as originating from an injury several months prior for which he was treated on March 1, 2018. *Id.*

Douthit was seen again by medical on July 2, 2018 for a complaint about a sore to his stump that had started three days prior and was treated. *Id.* On July 14, 2018, Douthit submitted a sick call request claiming that he had injured his stump during the May 23, 2018 major shakedown—nearly

---

[1] Any overheating or dizziness Douthit may have suffered following the major shakedown do not suffice to confer standing for two reasons. First, the *only* injury Douthit alleges to have suffered from Defendants' actions during the May 23, 2018 major shakedown is an injury to his stump (Compl. at 5-6), and thus the Court must limit its standing analysis to whether he suffered that injury. Second, the Fifth Circuit affirmed dismissal of Douthit's heat-related claims, and thus any heat-related injuries are irrelevant to his remaining claims, which allege only that Defendants violated the ADA by forcing him to carry his property during major shakedowns.

three months prior. *Id.* He was treated for that sore, but it did not originate on May 23, 2018, as alleged. *Id.* Rather, the sore complained of on July 14, 2018 was the same sore for which he was seen on July 2, 2018 (which had started three days prior). *Id.* Further indication that he did not have a sore on his stump originating from May 23, 2017 is that he submitted a sick call on June 29, 2018 requesting to be seen for a referral to prosthetic shoes, making no mention of a sore on his stump. *Id.* It is also documented on a July 9, 2019 clinic note that the wound on his stump had been ongoing for approximately seven to ten days, making it impossible for that injury to have arisen from the major shakedown several weeks earlier. *Id.*

Following the major shakedown on December 7, 2018, Douthit did not seek medical attention for an injury to his stump, as alleged. *Id.* He was not seen again by medical until three weeks later on December 28, 2018, when he complained of a boil on his finger and made no mention of an injury to his stump. *Id.* It was not until January 3, 2019 that Douthit submitted a sick call request stating that he had injured his stump during the December 7, 2018 major shakedown. *Id.* at 3. Douthit was seen that day for a sore on his stump, but there is no medical documentation supporting a correlation between that sore and the major shakedown nearly a month prior. *Id.* Rather, based on the physical description by the medical provider for the sore—and the lack of any mention of the sore by Douthit in his December 28, 2018 sick call request or subsequent visit—the sore seen on January 3, 2019 was most likely new onset after December 28, 2018. *Id.*

Because there is no evidence that Douthit suffered any injury as the result of Defendants' actions giving rise to his remaining claims, he lacks standing and the Court should dismiss those claims for want of subject-matter jurisdiction. *See Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016) (dismissing claims for lack of standing where plaintiffs had "not identified record evidence establishing their alleged harm"); *Ford v. NYLCare Heath Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002) (holding that plaintiff who failed to provide evidence of causation between his alleged injury and the

7

defendants' actions lacked standing to sue); *Jacques v. Med. Dep't, U.S.P. Pollock*, No. 1:17-cv-523, 2018 WL 7364628, at *4 (W.D. La. Dec. 27, 2018) (granting summary judgment where the inmate plaintiff had "failed to adduce any evidence of an injury caused by" the alleged misconduct and therefore "[did] not have standing to prosecute his claim"), *rec. adopted*, 2019 WL 845655 (W.D. La. Feb. 20, 2019).

### B. No genuine issue of material fact exists as to Douthit's remaining ADA claims.

Title II of the ADA requires public entities, including jails and prisons, to make "reasonable accommodations for disabled individuals." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020). To succeed on a failure-to-accommodate claim, a plaintiff must prove three elements: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered institution; and (3) the covered institution failed to make reasonable accommodations for such known limitations." *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. Appx. 214, 215 (5th Cir. 2015). Moreover, to recover monetary damages under the ADA, a plaintiff must also make a showing of intentional discrimination. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). As described below, there is no evidence that Douthit was denied reasonable accommodations during the two 2018 major shakedowns, or that any of the Defendants intentionally discriminated against him on the basis of his liability. His ADA claims must therefore be dismissed.

#### 1. There is no evidence that Douthit was denied reasonable accommodations for his disability during the major shakedowns.

The ADA provides a right to reasonable accommodation, not to the plaintiff's preferred accommodation. *See EEOC v. Argo Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009). An accommodation is reasonable when it provides "meaningful access to the benefit" being offered. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). In the prison context, officials are granted significant deference in their determinations of appropriate accommodations for inmates' disabilities. *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) (citing *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002); *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir.1994)).

Here, the evidence demonstrates that TDCJ provided several accommodations for all inmates, including Douthit, to move their property during the major shakedowns at issue in this case. First, all inmates at the Pack Unit in 2018 had the option of requesting rolling carts with which to move their property to the gym. Ex. B at ¶ 6. Second, all inmates were provided with "chain bags" in which to pack their property and could drag those bags to the gym. *Id.* at ¶ 7. Third, regardless of whether inmates chose to carry their property, drag their property in chain bags, or utilize rolling carts, they were allowed to make multiple trips between their cells and the gym. *Id.* at ¶ 8. These accommodations were objectively reasonable because, if utilized, they allowed inmates such as Douthit with lifting restrictions to move their property without risk of lifting more weight than their restrictions allowed. *See Clewis v. Hirsch*, No. H-13-2308, 2016 WL 1258404 (S.D. Tex. Mar. 30, 2016) (dismissing failure-to-accommodate ADA claim where "the record reflects[] that defendants allowed him to break up his property into smaller bags and take multiple trips to comply with his [lifting] restriction" during shakedowns), *aff'd*, 700 F. App'x 347 (5th Cir. 2017).

Douthit does not allege, much less prove, that he was denied any of these reasonable accommodations. Rather, he alleges generally that Defendants were aware of his lifting restriction and nonetheless forced him to carry his property and prevented him from dragging his property on a state-issued bedsheet. Compl. at 5-7. The Fifth Circuit held that these liberally construed allegations were sufficient to state an ADA claim at the Rule 12(b) stage, but they are insufficient to survive summary judgment. Even assuming Defendants were aware of Douthit's lifting restriction, there is no evidence that Defendants denied Douthit rolling carts, draggable chain bags, or the right to make multiple trips between his cell and the gym. The fact that Douthit was denied his *requested* accommodation—permission to drag his property on a state-issued bedsheet—is of no significance since he already had access to the above-listed accommodations which, if utilized, would have allowed him to fully comply with his lifting restrictions. *See Argo Distribution, LLC*, 555 F.3d at 471.

9

Moreover, there is no allegation or evidence that Douthit even *requested* a rolling cart, draggable chain bags, or permission to make multiple trips between his cell and the gym. Courts have made clear that an ADA claim cannot succeed where, as here, the plaintiff did not proactively ask for specific accommodations for their disability. *See, e.g.*, *Garner v. Chevron Phillips Chem. Co.*, 834 F. Supp. 2d 528, 565 (S.D. Tex. 2011) ("[A]lthough [plaintiff] gave [defendant] notice of her diagnoses, symptoms and medications, she did not ask for any accommodations . . . [Plaintiff] bears the burden of requesting specific reasonable accommodations under the ADA, so [defendant] is entitled to summary judgment on the reasonable accommodations issue."); *Pogue v. Southwest Credit Sys., L.P.*, No. 3:18-cv-1782, 2019 WL 6312267, at *4 (N.D. Tex. Oct. 30, 2019) (granting summary judgment on ADA claim where plaintiff failed to present any evidence that she asked for accommodations), *rec. adopted*, 2019 WL 6311143 (N.D. Tex. Nov. 22, 2019). In other words, Defendants cannot be held accountable for Douthit's choice to not request or utilize available accommodations.

### 2. There is no evidence of intentional discrimination.

Even if a plaintiff successfully proves his prima facie case under Title II of the ADA, he "may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle*, 302 F.3d at 574. The Fifth Circuit has hesitated to "delineate the precise contours" of the standard for showing intentionality, *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 575 (5th Cir. 2018), but what is required is "something more than 'deliberate indifference.'" *Cadena v.* 946 F.3d at 724. In some cases, a defendant's failure to make reasonable accommodations to the needs of disabled persons can constitute intentional discrimination under the ADA. *See Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir.2004). However, a prison official's misperception of a situation or failure to follow policy does "not convert a perhaps-negligent mistake into intentional discrimination or deliberate indifference." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 320 (5th Cir. 2020).

Douthit cannot make this showing of intentional discrimination. In its ruling on Defendants' motion to dismiss, the Fifth Circuit seemed to imply that Douthit's allegations that Defendants failed to accommodate his disability were sufficient to infer intentional discrimination, at least at the Rule 12(b) stage. *See* ECF No. 42 at 4. That reasoning does not preclude summary judgment, however, where "plaintiff can no longer rest on the pleadings and the court looks to the evidence before it." *McClendon*, 305 F.3d at 323. To the extent discrimination can be inferred from a failure to accommodate, the evidence of reasonable accommodations available to Douthit during the 2018 major shakedowns (*see* Ex. B) vitiates any such inference.

Moreover, given the availability of those accommodations, Defendants' orders for Douthit to carry his property and refusal to offer him an alternative accommodation (i.e., allowing him to drag his property on sheets) are more reasonably construed as misperceptions of the situation than intentional discrimination. After all, from Defendants' perspective, Douthit had already chosen not to make use of the available rolling carts and chain bags, and had already chosen to carry his belongings at once versus making multiple trips with smaller loads. Absent evidence that Defendants impeded Douthit's ability to utilize those available accommodations, an inference of intentional discrimination is unwarranted. *See Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 318-329 (5th Cir. 2020) (affirming grant of summary judgment on failure-to-accommodate claim where inmate produced no evidence that the county jail discriminated against him on the basis of his disability).

    **C.**    **Defendants retain their entitlement to Eleventh Amendment immunity.**

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). Even when the state is not a named defendant, Eleventh Amendment immunity extends to suits for monetary damages against a state employee sued in his official capacity. *See Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health &*

11

*Human Resources*, 532 U.S. 598, 609 (2001). Federal claims against state employees in their official capacity are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996).

While the ADA clearly states Congress's intent to abrogate state sovereign immunity (*see* 42 U.S.C. § 12202), the question of whether Congress had the power to give effect to that intent requires a case-by-case assessment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). The Supreme Court has established a multi-part test for determining whether Title II validly abrogates state sovereign immunity in a given case. *Id.* A court should first consider "which aspects of the State's alleged conduct violated Title II" and determine "to what extent such misconduct also violated the Fourteenth Amendment." *Id.* If the State's conduct violated *both* Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. *Id.* If the State's conduct violated Title II but did not violate the Fourteenth Amendment, the court must then determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*

Here, the Court need not look past the first stage of the *Georgia* analysis which, in the summary judgment context, requires assessing whether the plaintiff "offer[ed] sufficient evidence to create an issue of material fact on his Title II claims." *Wells v. Thaler*, 460 F. Appx. 303, 311 (5th Cir.2012). As described above, there is no competent summary judgment evidence that Defendants denied Douthit reasonable accommodations or intentionally discriminated against him based on his disability. Accordingly, Congress's abrogation of immunity is not valid in this case, and Douthit's claims are barred by the Eleventh Amendment. *Id.* at 314 ("Because we find that [plaintiff] has failed to raise an issue of material fact on his claims under Title II of the ADA, we hold that the state is entitled to immunity and we conclude that the claims for damages were properly dismissed.").

Moreover, Defendants would still be entitled to Eleventh Amendment immunity even if the Court were to reach the second stage of the *Georgia* analysis, which requires determining whether there is evidence of a Fourteenth Amendment violation. *Georgia*, 546 U.S. at 159. Because the Eighth

Amendment applies to the states through the Fourteenth Amendment, an ADA violation that is also an Eighth Amendment violation actually violates the Fourteenth Amendment." *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021). Just as Douthit cannot offer sufficient evidence to create an issue of material fact on his Title II claim, he cannot prove that Defendants inflicted the type of cruel and unusual punishment prohibited by the Eighth Amendment.

In an Eighth Amendment claim alleging deliberate indifference to the conditions of a prisoner's confinement, the plaintiff must satisfy both "subjective and objective requirements." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). To satisfy the objective requirement, the plaintiff must show an "objectively intolerable risk of harm." *Id.* To satisfy the subjective requirement, the plaintiff must show that the defendant: "(1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) subjectively 'dr[e]w the inference' that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference is "an extremely high standard to meet." *Domino v. TDCJ,* 239 F.3d 752, 756 (5th Cir. 2001). Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. *Hernandez ex rel. Hernandez v. Texas Dep't of Prot. & Reg. Serv.*, 380 F.3d 872, 883 (5th Cir. 2004).

Douthit fails to create an issue of material fact as to either the objective or subjective requirements of an Eighth Amendment claim. Douthit was not subjected to an objectively intolerable risk of harm during the 2018 major shakedowns because he had access to multiple accommodations which, if utilized, would have prevented him from carrying weight beyond his lifting restrictions. *See* Ex. B. There is also no evidence that Defendants acted with deliberate indifference, and on summary judgment Douthit cannot rest on unsupported allegations of malintent. *See Glowski v. Coleman*, No. H-18-1094, 2023 WL 2760064, at *9 (S.D. Tex. Mar. 31, 2023) ("Plaintiff's conclusory and unsupported allegations of deliberate indifference are insufficient to raise a genuine issue of material

13

fact precluding the granting of summary judgment."). Accordingly, Douthit has not met his burden to establish an Eighth Amendment violation sufficient to overcome Defendants' sovereign immunity.

### D. Douthit's claims for compensatory damages are barred by the PLRA's physical injury requirement.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In other words, without a physical injury resulting from the defendant's actions, an inmate cannot recover compensatory damages. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). To satisfy this requirement, the physical injury "must be more than *de minimis* but need not be significant." *Alexander v. Tippah Cnty., Ms.*, 351 F.3d 626, 630-31 (5th Cir. 2003). The Fifth Circuit has applied the PLRA's physical injury requirement to claims under the ADA. *See Buchanan v. Harris*, No. 20-20408, 2021 WL 4514694, at *1 (5th Cir. Oct. 1, 2021).

Here, Douthit alleges that he developed sores on his stump while being forced to carry his belongings during two major shakedowns. Compl. at 5-6. However, as discussed in the standing context above, that allegation is flatly contradicted by Douthit's medical records, which show that any sores on his stump were unrelated to the major shakedowns. *See* § VII.A., *supra*; Ex. A. Without evidence of a physical injury resulting from the major shakedowns and Defendants' actions or inactions therein, Douthit cannot recover compensatory damages in this case. *See Norman v. TDCJ-ID*, No. 6:cv-403, 2007 WL 3037129, at *7 (E.D. Tex. Oct. 18, 2007) ("The Defendant correctly noted that relief is barred under the PLRA because the Plaintiff has not shown a physical injury as a result of [the alleged misconduct giving rise to suit]"), *aff'd*, 293 F. App'x 285 (5th Cir. 2008).

Moreover, even assuming *arguendo* that Douthit did develop temporary sores on his stump during the major shakedowns, those sores would be considered *de minimus* and therefore insufficient to satisfy the PLRA. *See Mosley v. White*, 464 F. App'x 206, 212 (5th Cir. 2010) (prisoner's abrasions,

cut, temporary blindness, and infection were *de minimis* injuries); *Westfall v. Luna*, 903 F.3d 534, 549–50 (5th Cir. 2018) (holding that abrasions and bruises were *de minimis* injuries); *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (explaining that "scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc." do not pass the *de minimis* threshold).[2]

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant them summary judgment and dismiss Douthit's claims with prejudice.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Texas State Bar No. 24077883
Michael.calb@oag.texas.gov

---

[2] Douthit's medical records indicate that he complained about feeling hot and dizzy following the major shakedown on May 23, 2018. Ex. A at 2. However, those alleged injuries are irrelevant for the PLRA analysis because they do not pertain to Douthit's active claims, which assert only that Defendants' actions led to injuries to his stump. In addition, overheating and dizziness are considered *de minimus* injuries for the purposes of the PLRA. *See, e.g., Ramos v. Samaniego*, No. EP-07-CA-320-FM, 2008 WL 3539252, at *6 (W.D. Tex. Jul. 24, 2008) (holding that dizziness was a *de minimis* injury); *Thornton v. Phillips*, No. 5:17-cv-199, 2019 WL 5304086, at *2 (E.D. Tex. Oct. 21, 2019) (holding that "mild overheating and elevated blood pressure" were *de minimus* injuries).

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, Michael J. Calb, Assistant Attorney General of Texas, certify that a correct copy of the foregoing has been served on Plaintiff by placing it in the United States Mail, postage prepaid, on May 12, 2023 addressed to:

Shannon Mark Douthit        *Certified Mail Number: 70172680000052602194*
TDCJ #00453033
Pack Unit
2400 Wallace Pack Road
Navasota, TX 77868

/s/ *Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General