UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHANNON MARK DOUTHIT, (TDCJ #00453033) | § § § |
| Plaintiff, | § § |
| vs. | §   CIVIL ACTION NO. H-19-1712 |
| STATE OF TEXAS, *et al.*, | § § § |
| Defendants. | § § |

## MEMORANDUM OPINION AND ORDER

Texas state inmate Shannon Mark Douthit, representing himself and proceeding without prepaying the filing fee, filed a complaint alleging that multiple prison officials at the Pack I Unit of the Texas Department of Criminal Justice—Correctional Institutions Division violated his civil rights and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.* (Docket Entry No. 1). This court granted the defendants' motion to dismiss, (Docket Entry No. 14), but the Fifth Circuit vacated that decision in part and remanded for further proceedings on Douthit's ADA claims against four defendants based on their conduct during two "major shakedowns."[1] *See Douthit v. Collier*, No. 20-20550, 2022 WL 5240152 (5th Cir. Oct. 5, 2022) (per curiam).

On remand, the remaining defendants—Lieutenant Mark A. Temple, Lieutenant Felipe J. Peralta, Jr., Sergeant Mitchell D. Kroll, and Major Sergio Perez—answered the complaint and then filed a joint motion for summary judgment. (Docket Entry Nos. 48, 55, 70). They supported their

---

[1]According to the defendants, "major shakedowns" are unit-wide comprehensive searches, during which all inmates must remove all personal belongings from their cells and transport them to and from a designated area, where staff systematically search the belongings for contraband. (Docket Entry No. 70, p. 2).

motion with two affidavits and portions of Douthit's medical records. (Docket Entry Nos. 70-1, 71). Douthit filed a response to the motion, together with his sworn declaration and other documents tending to support his claims. (Docket Entry No. 77). The defendants have not filed a reply, and their time to do so has now expired. Having considered Douthit's complaint, the motion and response, the summary judgment evidence, and the applicable law, the court determines that the defendants' motion for summary judgment should be denied. The reasons are explained below.

I.      **Background**

Before entering TDCJ custody, Douthit suffered a below-the-knee amputation of his right leg. (Docket Entry No. 1, p 5). He uses a prosthetic leg and crutches to walk. Douthit is also obese and allegedly suffers from heat sensitivity due to several other medical conditions. (*Id.* at 4-6). He has been assigned to TDCJ's Pack I Unit since 2010. (*Id.* at 5).

In his original complaint, Douthit sued Bryan Collier, Executive Director of TDCJ; Robert Herrera, Warden of the Pack I Unit of TDCJ-CID; and four Pack I Unit officers: Lieutenant Temple, Lieutenant Peralta, Sergeant Kroll; and Major Perez. (*Id.* at 3). Douthit alleges that these defendants violated the ADA by requiring him to carry his personal belongings by hand during two major shakedowns in 2018 and by denying him an air-conditioned cell as required by a court order in *Cole v. Collier*, Civil No. 4:14-cv-1698 (S.D. Tex.), a separate class action in which he is a class member. (*Id.* at 4-7). Douthit's complaint also alleges that these defendants violated 42 U.S.C. § 1983 by retaliating against him due to his participation in the *Cole* class action. (*Id.*).

This court originally granted the defendants' joint motion to dismiss and dismissed Douthit's complaint. (Docket Entry Nos. 23, 24). On appeal, the Fifth Circuit affirmed the dismissal of Douthit's § 1983 retaliation claim and his ADA claim based on the denial of an air-conditioned cell. *See Douthit*, 2022 WL 5240152, at *1. It also affirmed the dismissal of all

2

Douthit's claims against defendants Collier and Herrera. *Id.* But it reversed the dismissal of Douthit's ADA claims against Lieutenant Temple, Lieutenant Peralta, Sergeant Kroll, and Major Perez arising from the major shakedowns and remanded those claims for further proceedings. *Id.*

The first of these two remaining claims arises from a major shakedown that occurred on May 23, 2018. (Docket Entry No. 1, p. 5). Douthit alleges that during that major shakedown, Lieutenants Temple and Peralta ordered him to carry his personal property from his cell to the gym by hand. (*Id.*). When Douthit pointed out his amputated leg and medical lifting restrictions, Lieutenants Temple and Peralta refused to offer him any accommodation for his disability and instead insisted that he carry his property by hand. (*Id.*). Major Perez was present at the time, but he refused to take any action to assist Douthit or provide him with an accommodation. (*Id.*). Douthit alleges that as a result of having to carry his property, he suffered an injury to his stump that required medical attention. (*Id.*).

The second of Douthit's remaining claims arises from a major shakedown that occurred on December 7, 2018. (*Id.* at 6). Lieutenant Temple and Sergeant Kroll oversaw that shakedown. (*Id.*). Douthit placed his property on a bedsheet from his cell and was dragging the bedsheet behind him towards the gym when Sergeant Kroll ordered Douthit to pick up his property and carry it to the gym. (*Id.*). Douthit said that he was an amputee with lifting restrictions, but Sergeant Kroll became "belligerent" and ordered Douthit to carry his property to the gym by hand. (*Id.*). After Douthit's property was searched, Lieutenant Temple ordered him to carry his property back to his cell by hand. (*Id.* at 6-7). When Douthit protested the order based on his disability and lifting restrictions, Lieutenant Temple said, "If you can't carry it, you shouldn't have it." (*Id.* at 7). Lieutenant Temple ordered Douthit to hand-carry his property back to his cell, which resulted in another injury to Douthit's stump. (*Id.*).

Douthit attached to his complaint copies of his Step 1 and Step 2 grievances concerning these two shakedowns. (Docket Entry No. 1-1). He also attached a copy of a letter sent by Attorney Scott Medlock to the Texas Attorney General's Office on January 18, 2019, relating to the December 2018 major shakedown. (Docket Entry No. 1-2). These documents tend to support Douthit's claims that he was ordered to carry his property during these shakedowns in violation of his lifting restrictions and was neither offered nor provided with any accommodation for his disability. These documents also tend to support Douthit's claim that he suffered injuries to his stump in each of these shakedowns. Douthit seeks compensatory damages for his injuries from each of the defendants in their official capacities. (Docket Entry No. 1, p. 4). He also seeks an award of punitive damages from Lieutenant Temple and Sergeant Kroll.[2] (*Id.*).

The defendants answered these allegations, (Docket Entry Nos. 48, 55), and then filed a joint motion for summary judgment. (Docket Entry No. 70). In support of their motion, they filed the affidavits of Major Matrice Wilburn and Beverly A. Wilbur, D.O., together with select portions of Douthit's medical records. (Docket Entry Nos. 70-1, 71). The defendants contend that this summary judgment evidence shows that Douthit was not injured in either shakedown and so has no standing to pursue his claims. (Docket Entry No. 70, pp. 5-8). They also contend that the lack of injury bars his claim under the physical injury requirement of the Prison Litigation Reform Act (PLRA). (*Id.* at 14-15). They contend that the summary judgment evidence also shows that none of the defendants violated the ADA. (*Id.* at 8-11). And they contend that because Douthit cannot prove an ADA violation, the defendants retain their sovereign immunity. (*Id.* at 11-14).

---

[2]Punitive damages are not available in actions under the ADA regardless of whether a plaintiff can establish intent. *See Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002). The defendants did not seek summary judgment on this aspect of Douthit's damages claim, so the court will not address it further.

4

Douthit responded to the defendants' motion, attaching his sworn declaration in support of his claims. (Docket Entry Nos. 77, 77-2). He also attaches an unsworn declaration from fellow inmate Anthony Ortiz, who states that inmates on the Pack I Unit were not permitted any accommodations to assist with moving their property after the class action in *Cole* was filed. (Docket Entry No. 77-1, p. 25). In addition, Douthit attaches the same grievance records and the letter from Attorney Medlock that he had attached to his original complaint. (Docket Entry No. 77-1). Douthit contends that this evidence supports his claims and shows that genuine disputes of fact exist that should preclude summary judgment in favor of the defendants.

## II. The Legal Standards

### A. Summary Judgment

The defendants have filed a motion for summary judgment. "Summary judgment is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014) (per curiam) (quoting FED. R. CIV. P. 56(a)). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010)). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

The court considering a motion for summary judgment must view all evidence and draw all inferences "in the light most favorable to the opposing party." *Tolan*, 572 U.S. at 657 (quoting

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)); *see also Dyer*, 964 F.3d at 380.  But if record evidence clearly contradicts the opposing party's version of events, the court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Waddleton v. Rodriguez*, 750 F. App'x 248, 253-54 (5th Cir. 2018) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  In addition, the court will not consider the nonmoving party's conclusory allegations and unsubstantiated assertions as evidence.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  But when both parties have submitted evidence that tends to show conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

Summary judgment may not be granted unless, viewing the evidence in the light most favorable to the nonmoving party, no genuine disputes of fact exist and no reasonable jury could return a verdict for the nonmoving party.  *See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund,* 218 F.3d 392, 399 (5th Cir. 2000).  "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues."  *Byrd v. Roadway Exp., Inc.,* 687 F.2d 85, 87 (5th Cir. 1982); *see also Aubrey v. Sch. Bd. of Lafayette,* 92 F.3d 316, 318 (5th Cir. 1996).

### B.   Pleadings from Self-Represented Litigants

Douthit is representing himself, so the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]"  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts."  *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d

6

475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

**III. Analysis**

    **A.    The Standing Claim**

The defendants first contend that they are entitled to summary judgment in their favor because Douthit has not established standing. A plaintiff must have standing under Article III of the United States Constitution to be entitled to invoke a federal court's subject matter jurisdiction. *See Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022). To establish standing under Article III, a plaintiff must allege and prove (1) an injury in fact, (2) that is traceable to the defendants' conduct, and (3) that can be redressed by the court. *Id.* at 302 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Daves v. Dallas County, Tex.*, 22 F.4th 522, 542 (5th Cir. 2022) (en banc) (quoting *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008)).

    The defendants contend that the summary judgment evidence conclusively establishes that Douthit did not suffer any injury because of their conduct. To support their contention, they point to the affidavit of Dr. Wilbur and its attached medical records. (Docket Entry No. 71). In her affidavit, Dr. Wilbur states that she reviewed Douthit's medical records "from 6/06/2018 until the present." (*Id.* at 2). Despite this specific date limitation, Dr. Wilbur states that Douthit "did not immediately seek medical attention" after the May 23 major shakedown. (*Id.* at 3). She states that Douthit submitted a sick call on June 5, reporting that he was suffering heat-related complications. (*Id.*). He was seen the next day and complained "that while carrying his properties during

7

shakedown he got hot and dizziness and that after cooling down he felt better." (*Id.*). Dr. Wilbur states that the June 6 clinic notes do not refer to any injury to Douthit's stump. (*Id.*). She notes that Douthit's medical lifting restrictions were changed at his June 6 visit, but the clinic notes do not explain the reason for the change. (*Id.*). Dr. Wilbur also states, "It is noted that he had a wound to his stump which he indicates was due to his prosthesis rubbing against his stump on 2/15/2018 and on 2/28/2018 for which he was seen on 3/1/2018 and treated." (*Id.*). But Dr. Wilbur's affidavit does not reference a specific medical record for this note, and the June 6 clinic notes attached to her affidavit do not include this alleged statement or any reference to a February injury.

Dr. Wilbur states that Douthit submitted another sick call on June 29, requesting a referral to the prosthetics clinic for medical shoes. (*Id.*). Dr. Wilbur notes that Douthit did not mention a wound on his stump in that request. (*Id.*).

Dr. Wilbur states that Douthit was next seen in the medical clinic on July 2, 2018, complaining of a wound on his stump that started "3 days ago." (*Id.*). On July 14, 2018, Douthit submitted a sick call request stating that he had an injury to his stump from May 23, but Dr. Wilbur states that "this sore did not originate on 5/23/2018 as he alleged." (*Id.*). Dr. Wilbur states that a clinic note from July 9 states that Douthit was treated for a wound on his stump that had been ongoing for 7 to 10 days. (*Id.*). Based on these notes, Dr. Wilbur states that this wound occurred sometime after May 23—not during the May 23 major shakedown. (*Id.*).

Dr. Wilbur states that Douthit made no further complaints about the injury to his stump until January 3, 2019, when he submitted a sick call request stating that he had a wound on his stump that had started on December 7 "when he was forced to carry his personal belongings." (*Id.* at 4). Dr. Wilbur notes that Douthit was treated for a boil on his finger on December 28 and made no mention of a wound on his stump at that time. (*Id.* at 3-4). Based on this omission, she opines

that "the sore seen on 1/3/2019 was most likely new onset after 12/28/2018." (*Id.* at 4). She then concludes that "there is no medical documentation indicating that Douthit injured his stump on either 5/23/2018 or 12/7/2018." (*Id.*).

In his sworn declaration filed in response to the defendants' motion, Douthit asserts that he went to the emergency medical clinic on May 23 suffering from heat exhaustion and a bleeding stump. (Docket Entry No. 77-2, pp. 1-2). He asserts that there should be an injury report from May 23 that would show both injuries, but he points out that the defendants did not provide medical records to either him or the court from any date before June 6, 2018—almost two weeks after the May 23 shakedown. (*Id.* at 2). He contends that the change to his medical lifting restrictions on June 6 was due to the injury to his stump that he suffered on May 23. (*Id.*). As to the December 7 shakedown, Douthit states that he did not immediately seek medical attention for the wound he suffered on his stump during that shakedown but instead waited to seek treatment until it was clear that the wound would not heal on its own. (Docket Entry No. 77, p. 3).

The grievances attached to Douthit's complaint and also filed in support of his motion for summary judgment tend to support his claim that he suffered injuries during the May and December shakedowns.[3] In his Step 1 grievance dated June 7, Douthit reported that while his lifting restrictions were changed after the May 23 shakedown, he received "no treatment or examination for condition." (Docket Entry No. 1-1, p. 1-2). In his Step 2 grievance dated July 30, he reported that he "rubbed a sore on my amputated leg" during the May 23 shakedown but that the doctor "did not treat the sore on my leg nor did she recommend treatment." (*Id.* at 3). And in

---

[3]Because the defendants do not challenge the lack of authentication of the records Douthit filed in opposition to the motion, the court may consider them in ruling on the motion for summary judgment. *See, e.g., Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985) ("Documents presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use.").

a Step 1 grievance dated December 11, 2018, Douthit reported that during the December 7 shakedown, "I injured my amputated leg again." (*Id.* at 5).

Review of the summary judgment evidence offered by all parties shows that genuine disputes of fact exist material to determining whether Douthit suffered an injury to his stump during either of the two major shakedowns. Neither Dr. Wilbur's affidavit nor the limited medical records provided by the defendants conclusively refute Douthit's claim that he was injured during the May 23 shakedown. By Dr. Wilbur's own admission, she reviewed medical records only "from 6/06/2018 until the present." (Docket Entry No. 70, p. 2). Because Douthit's injury would have occurred on May 23, Dr. Wilbur's failure to review Douthit's medical records from before or immediately after this date means that her affidavit does not conclusively refute his claim of injury. And Dr. Wilbur points to no medical records that support her statement that Douthit's January 2019 wound was not caused during the December 7 shakedown. While the absence of a medical record between December 7 and January 3 may provide some evidence that Douthit's injury did not occur in the December shakedown, it does not conclusively establish that it did not. *See, e.g., Ochoa v. P.A.M. Transport, Inc.*, No. SA-17-CV-787-XR, 2019 WL 9171203 (W.D. Tex. Nov. 18, 2019) (rejecting physician's conclusion that a delay in seeking treatment means that no injury occurred). And Douthit's sworn declaration, the grievances attached to his complaint and his response to the motion for summary judgment, and his medical records (or lack thereof) create a genuine dispute of fact material to determining whether he suffered an injury in the December 7 shakedown. *See Perez v. Collier*, No. 20-20036, 2021 WL 4095263, at *3 (5th Cir. Sept. 8, 2021) (per curiam) (noting that an inmate's "self-serving [] declarations made under the penalty of perjury are competent summary judgment evidence").

In sum, the summary judgment evidence shows that genuine disputes of fact exist material to the question of whether Douthit suffered an injury to his stump during either the May or December major shakedown. Because a rational jury could find based on the evidence before the court that Douthit suffered an injury to his stump during each of these major shakedowns, summary judgment based on a lack of standing is denied.

### B. The ADA Claim

The defendants also contend that the summary judgment evidence conclusively shows that they did not violate Douthit's rights under Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.* Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA applies to state prisons and prisoners, *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1988), and it "imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (per curiam) (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004), and *Yeskey*, 524 U.S. at 213); *see also Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020).

To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he has a qualifying disability; (2) he was excluded from or denied meaningful access to services, programs, and activities, or he was discriminated against by the defendants; and (3) such discrimination is due to his disability. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam). A "disability" under the ADA is: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual, (2) a record of such an impairment, or

11

(3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). The ADA defines "discrimination" as the failure to provide a reasonable accommodation to the needs of the disabled person. *See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). In other words, by failing to accommodate the disabled person's disability, the defendant has effectively discriminated against the person. *See Lane,* 541 U.S. at 531.

The defendants in this case do not dispute that Douthit is disabled.[4] Instead, they contend that the summary judgment evidence shows that they did not intentionally discriminate against him. An ADA plaintiff can establish discrimination in two ways: either (1) by showing disparate treatment, i.e., that he was treated differently and less favorably than other, non-disabled inmates, or (2) by showing a failure to accommodate, i.e., "that the defendant breached its affirmative obligation to reasonably accommodate the plaintiff's disability." *Arce v. Louisiana*, Civil No. 16–14003, 2016 WL 7407223, at *5 (E.D. La. Dec. 22, 2016) (cleaned up) (citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1283 (7th Cir. 1996) and *Borum v. Swisher County*, No. 2:14-cv-127-J, 2015 WL 327508, at *9 (N.D. Tex. Jan. 26, 2015)). A disabled prisoner may establish the second and third elements of an ADA claim by offering evidence that the prison failed to provide him with a reasonable accommodation. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (a prison's refusal to provide a reasonable accommodation to a paraplegic inmate resulted in the disabled inmate suffering serious punishment "without penal justification" and supported a claim under the ADA); *Yeskey*, 524 U.S. at 213 (public entities have an affirmative obligation to make reasonable accommodations for disabled prisoners); *Garrett*, 560 F. App'x at 382. To

---

[4]The ADA includes "walking" as a major life activity. 42 U.S.C. § 12102(2)(A). Douthit's amputation is a physical impairment that substantially limits his ability to walk. Because of this, he is disabled for purposes of the ADA.

recover an award of compensatory damages, an ADA plaintiff must prove that the discrimination was intentional. *See Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

In their motion for summary judgment, the defendants contend that the summary judgment evidence affirmatively shows that they made reasonable accommodations for Douthit's disability. They rely on the affidavit of Major Wilburn, who states that the Pack I Unit has multiple policies in place to ensure that inmates can safely transport their property during major shakedowns. (Docket Entry No. 70-1, p. 2). Major Wilburn states that "all Pack Unit inmates have access to rolling carts to assist them in moving the property during major shakedowns." (*Id.*). If an inmate asks for a cart, one is provided. (*Id.* at 2-3). In addition, Pack Unit inmates are provided with "large commissary 'chain bags' in which to pack their property." (*Id.* at 3). Inmates may request multiple chain bags and may drag the bags along the floor. (*Id.*). Inmates are not allowed to drag their property on either sheets or blankets as those are state-issued items that could be damaged. (*Id.*). The defendants contend that this evidence conclusively shows that they made reasonable accommodations for Douthit's disability.

In response, Douthit provided his sworn declaration attesting that even if the accommodations identified by Major Wilburn were generally available within TDCJ and the Pack Unit, the defendants did not make them available during the two major shakedowns at issue. (Docket Entry No. 77-2, p. 1). Instead, despite Douthit's request for a reasonable accommodation, the defendants required him to carry his property from his cell to the gym by hand. (*Id.*). They also refused to allow him to make multiple trips to carry his property, saying, "If you can't carry it, you shouldn't have it." (*Id.*). Fellow inmate Ortiz corroborates these statements in his unsworn declaration, stating that inmates were not provided with either rolling carts or chain bags during the major shakedowns, even after they requested them. (Docket Entry No. 77-1, p. 25). And the

letter from Attorney Medlock to the Attorney General also supports Douthit's assertion that rolling carts were not provided to inmates in the E-Wing of the Pack I Unit where Douthit was living during the December major shakedown. (*Id.* at 22).

While the defendants' evidence shows that TDCJ had a policy of providing rolling carts and chain bags to inmates who requested them, it does not show that such accommodations were made available to Douthit on the dates of the major shakedowns. Instead, the totality of the summary judgment evidence shows that genuine disputes of fact exist material to the question of whether the defendants made these accommodations available to disabled inmates such as Douthit. The existence of a policy to provide reasonable accommodations does not discharge the defendants' duties under the ADA if the defendants choose not to provide those accommodations to disabled inmates when needed. And the disputes in the evidence concerning whether reasonable accommodations were made available preclude summary judgment in favor of the defendants.

As an alternative basis for their motion, the defendants assert that the summary judgment evidence does not show that Douthit actually requested any accommodation, and they contend that his failure to request an accommodation bars his ADA claim. But Douthit alleges in his unsworn declaration that he did request accommodations, although it is not clear exactly what accommodation he sought. And even if Douthit did not request a specific accommodation, public entities have an affirmative obligation to make reasonable accommodations for disabled prisoners. *See, e.g., Cadena*, 946 F.3d at 723. To trigger that affirmative obligation, the "plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Id.* at 724 (citing *Windham v. Harris County*, 875 F.3d 229, 236-37 (5th Cir. 2017)); *see also Delano-Pyle*, 302 F.3d at 575-76 (finding intentional discrimination when a deputy knew the hearing-

14

impaired suspect could not understand him but the deputy made no attempt to adapt to another way of communicating).

The summary judgment evidence shows that the Pack I Unit housed geriatric and disabled inmates, putting prison officials on notice that inmates might need various types of accommodations. The summary judgment evidence also shows that Douthit had a below-the-knee amputation, used a prosthetic leg, and walked with the aid of crutches. The nature of his physical limitation was open and obvious, and to the extent that it was not, the summary judgment evidence, taken in the light most favorable to Douthit, shows that he told the defendants of his disability and asked for an accommodation. Instead of offering any form of accommodation, the defendants told Douthit that he would have to carry his property by hand or they would take it away from him. (Docket Entry No. 77-2). Viewing the evidence in the light most favorable to Douthit, a rational jury could find that the defendants intentionally discriminated against Douthit by refusing to provide him with an accommodation despite his request. It follows that the defendants are not entitled to summary judgment on this basis.

The summary judgment evidence before the court shows that disputes of fact exist material to the question of whether the defendants discriminated against Douthit by intentionally refusing to provide him with an available and reasonable accommodation during two major shakedowns. Because disputed factual issues exist, the defendants are not entitled to summary judgment on Douthit's ADA claim, and their motion is denied.

### C. The Sovereign Immunity Claim

The defendants next contend that even if there are disputes of fact concerning whether they violated the ADA, they are still entitled to immunity under the Eleventh Amendment in the absence of evidence that their conduct also violated the Fourteenth Amendment. But the summary

judgment evidence before the court raises questions of fact as to whether sovereign immunity has been abrogated for this claim, requiring denial of the motion on this basis.

The ADA provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. This provision is an unequivocal statement of Congress's intent to abrogate state sovereign immunity for ADA claims. *See Georgia,* 546 U.S. at 154. However, the Supreme Court has held that Congress can abrogate a State's sovereign immunity only by exercising a power granted to Congress in the Constitution. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Section 5 of the Fourteenth Amendment grants Congress the power to enforce the provisions of that amendment by creating private remedies against the States for actual violations of that amendment's provisions. *See Georgia*, 546 U.S. at 158. Therefore, Congress can validly abrogate a State's sovereign immunity under section 5 of the Fourteenth Amendment *only when* the conduct being challenged also violates the Fourteenth Amendment or one of the amendments made applicable to the States by the Fourteenth Amendment. *Id.* at 159, 163; *see also Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003) (reiterating that Congress can abrogate state sovereign immunity only if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment").

The ADA prohibits a wider range of conduct than the Constitution. *See Georgia*, 546 U.S. at 159. So to determine whether sovereign immunity has been abrogated for a particular ADA claim, courts apply a three-part test set out in *Georgia*: (1) has the plaintiff stated a plausible ADA claim; (2) if he has, do his allegations also state a violation of the Fourteenth Amendment; and (3) if the plaintiff has stated a plausible ADA claim that is not *also* a Fourteenth Amendment

violation, has he identified prohibited conduct that is "congruent and proportional" to a pattern of Fourteenth Amendment violations that Congress sought to remedy. *Id.*

The Fifth Circuit previously held that Douthit's allegations were sufficient to state a claim under both the ADA and the Eighth Amendment and so he sufficiently alleged a claim that would abrogate the defendants' claim of sovereign immunity. *See Douthit*, 2022 WL 5240152, at *3. And this court has found that factual issues exist material to the question of whether the defendants acted as Douthit alleged. If they did, the defendants' actions would violate both the ADA and the Eighth Amendment, thereby eliminating the protection of sovereign immunity. *See Valentine v. Collier*, 993 F.3d 270, 280-81 (5th Cir. 2021) (noting that because a prison officials' refusal to accommodate an inmate's disability needs "in such fundamentals as mobility, hygiene, [and] medical care" can violate both the ADA and Eighth Amendment, sovereign immunity was abrogated). The fact questions raised by the evidence before the court preclude summary judgment on the question of whether the defendants are protected by sovereign immunity. The defendants' motion for summary judgment on this basis is denied.[5]

### D. The PLRA Injury Requirement

The defendants also assert that they are entitled to summary judgment in their favor because Douthit has not satisfied the PLRA's physical injury requirement. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Absent some physical injury, a prisoner cannot

---

[5]Because Douthit has alleged conduct that is a violation of both the ADA and the Eighth Amendment, this court need not address the third element of the *Georgia* test for abrogating sovereign immunity. *See, e.g., Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 224-25 (5th Cir. 2018) (providing that the court need only proceed to the third question if the answer to the second question was no).

recover compensatory damages. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam).

The Fifth Circuit has held that "[f]or a leg amputee, skin health is of utmost importance and even small lesions may become an extensive disorder that will seriously threaten the amputee." *Buchanan v. Harris*, No. 20-20408, 2021 WL 4514694, at *2 (5th Cir. Oct. 1, 2021) (per curiam) (cleaned up). Because of this, "skin sore allegations, if proven, are a physical injury that allows [a leg amputee] to recover damages." *Id.* As explained in connection with the defendants' argument on standing, the summary judgment evidence in this case, viewed in the light most favorable to Douthit, shows that genuine disputes of fact exist material to the question of whether he developed wounds on his stump as a result of being forced to carry his property during the two major shakedowns. Douthit's allegations, if ultimately proven, are sufficient to establish the physical injury necessary to allow him to recover damages under the PLRA. The defendants are not entitled to summary judgment in their favor on this basis.

## IV.  Conclusion and Order

The defendants' motion for summary judgment, (Docket Entry No. 70), is denied. A scheduling order for further proceedings will be separately entered.

SIGNED on July 31, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge